**In the Matter of ROMERO
& BUSOT, INC.**

**Civ. No. 91–1921.**

United States District Court,
D. Puerto Rico.

Feb. 12, 1992.

Julio Morales–Sánchez, Bayamón, P.R.,
for Romero & Busot, Inc.

Asst. U.S. Atty. Sylvia Carreño–Coll,
U.S. Attorney's Office, D. P.R., Ronald M.
Spritzer, Environmental Defense Section,
Environment & Natural Resources Div.,
U.S. Dept. of Justice, Washington, D.C.,
for U.S. E.P.A.

ORDER

FUSTE, District Judge.

Petitioner Romero & Busot, Inc. ("Romero") appeals an administrative order issued by the United States Environmental Protection Agency ("EPA"), ordering compliance with various regulations authorized pursuant to the Safe Drinking Water Act of 1974, as amended, 42 U.S.C. §§ 300f–300j–25 ("SDWA"), and assessing civil penalties totalling $29,500 for violations of EPA regulations. The government moves for summary judgment and affirmance of the final administrative order, while the petitioner challenges the amount of the civil penalties assessed. This court's jurisdiction is based on section 1423 of the SDWA, as amended, 42 U.S.C. § 300h–2(c)(6).

Because we find that the EPA did not abuse its discretion in assessing the penalty, we grant the government's motion for summary judgment and affirm the EPA's administrative order.

I.

*Factual and Procedural Summary*

Petitioner submits that the sole issue on appeal is the amount of the civil penalty imposed by the EPA. No challenge is made to the order itself or to the requirement that petitioner comply with the applicable regulations. We, therefore, briefly summarize the facts and prior administrative proceedings before ruling on the penalty issue.

Romero operates an engine rebuilding shop in Bayamon, Puerto Rico. As part of the facility, there are two industrial septic disposal systems, classified by the EPA as 5W20 injection wells. One of the wells has been in operation since 1981 and the second went into operation sometime after March 1989. These wells are used to dispose of liquid sanitary and industrial wastes generated at the business, including oil, grease, sanitary wastes, and other industrial solvents and chemicals.

The injection wells at Romero's shop are classified as Class V wells [1] and are subject to EPA regulation as part of the Underground Injection Control ("UIC") program mandated under Part C of the SDWA, 42 U.S.C. §§ 300h–300h–7, and the regulations

---

**1.** *See* 40 C.F.R. § 144.6(e).

promulgated thereunder, 40 C.F.R. §§ 144.1–144.70, 146.1–146.73 (1991).[2] The purpose of the implementing regulations is to set minimum standards for UIC programs in all of the states, including Puerto Rico, so that the EPA may fulfill its "duty to assure that underground sources of drinking water will not be endangered by any underground injection." *National Resources Defense Council v. U.S.E.P.A.*, 824 F.2d 1258, 1268 (1st Cir.1987). Where the state does not have an EPA-approved UIC program, as is the case in Puerto Rico, section 1422 of SDWA, 42 U.S.C. § 300h–1 mandates that the EPA itself administer the UIC program.

On March 28, 1989, an EPA representative conducted an inspection of Romero's shop and found that the existing well was full and was overflowing onto the ground and that petitioner was storing degreaser agents and motor wash solvents on site. (Docket Document No. 2, *Exhibit 1*). On August 30, 1990, Romero received a certified letter from the EPA stating that its underground wells were subject to the UIC program and requesting that petitioner either apply for a UIC permit or close the well. (*Id., Exhibit 2*). Petitioner was also warned that continued unauthorized injection might result in either the commencement of a civil enforcement action or the issuance of an administrative order assessing a civil penalty pursuant to section 1423 of the SDWA, 42 U.S.C. § 300h–2. Although petitioner acknowledged receipt of the letter, no other response was made.

The EPA sent a second letter on February 12, 1991, again informing petitioner that it was in violation of the SDWA and requesting a response to the August 30, 1990 letter. (*Id., Exhibit 3*). Petitioner again failed to respond. Thereafter, on March 13, 1991, the EPA conducted a second inspection of the facility and found the second well in operation. (*Id., Exhibit 4*). The EPA also found that there was the potential for a variety of substances—oils, solvents, service station bay waste waters—to drain into the well. Again petitioner submitted no response.

Thereafter, on March 28, 1990, the EPA issued a proposed administrative order under § 1423(c)(2) of the SDWA, 42 U.S.C. § 300h–2(c)(2). (*Id., Exhibit 11*). The proposed order found petitioner in violation of three EPA regulations, 40 C.F.R. 144.11 (prohibiting unauthorized underground injection); 40 C.F.R. 144.12 (prohibiting the movement of fluids containing any contaminant into any underground sources of drinking water where the presence of the contaminant may violate any primary drinking water regulation under 40 C.F.R. part 142 or may otherwise adversely affect the health of persons); and 40 C.F.R. 144.25 (requiring a UIC permit), ordered Romero to submit either a permit application or a closure plan within thirty days, and proposed a civil penalty of $29,500. The EPA also fulfilled the notice requirements of § 1423(c)(3), 42 U.S.C. § 300h–2(c)(3), by sending petitioner a copy of the proposed order by certified mail and by publishing the proposed order in a local newspaper in order to allow for public comment and, in the case of Romero, to request an administrative hearing.

Although the EPA received a letter from counsel for Romero on April 4, 1991 (Docket Document No. 4, *Exhibit 1*),[3] petitioner neither commented on the proposed order nor requested a hearing. No other member of the public commented on the proposed order.

The EPA then issued its final administrative order on June 27, 1991. Plaintiff now appeals this final order.

## II.

### Standard of Review

Section 1423(c)(6) sets forth the standard of judicial review for an administrative order issued under Part C of the SDWA. The district court shall not set aside or remand such order unless there is not

---

**2.** Other regulations associated with the UIC program are found in 40 C.F.R. Parts 124, 145, 147 and 148.

**3.** The letter was dated March 14, 1991 and expressed petitioner's desire to cooperate with the EPA in the closure of the well.

substantial evidence on the record, taken as a whole, to support the finding of a violation or, unless the Administrator's assessment of penalty or requirement for compliance constitutes an abuse of discretion.

42 U.S.C. § 300h–2(c)(6). *See Moose Oil Company v. United States of America,* Civil Nos. 88–1178E, 88–1179E, 1990 WL 118098 at *1, 1990 U.S. Dist. Lexis 14906 at *2 (W.D.N.Y.1990). Since petitioner challenges the amount of the civil penalty imposed, we review the EPA's penalty assessment under an abuse of discretion standard.

### III.

#### *Discussion*

The EPA has submitted a copy of its Region II penalty policy and the actual calculation made in Romero's case. (Docket Document No. 4, *Exhibit 3*). This policy outlines a matrix whereby the penalty amount is determined on the basis of both the seriousness of the violation and the extent of the violator's deviation from the requirements. This amount is then multiplied by the number of six-month periods during which the particular violation occurred to arrive at an initial total dollar amount for the particular type of violation. These dollar amounts are then added together and the total is adjusted for any appropriate "adjustment factors,"—economic benefit received as a result of noncompliance, violator's ability to pay, and any unique factors.

Having reviewed the EPA Region II's penalty policy and its application in petitioner's case, we find no abuse of agency discretion. The agency correctly applied the matrix based on the seriousness of each of the three violations [4] and petitioner's deviation from the requirements.[5] The time periods were also calculated according to the EPA penalty statement, resulting in an initial penalty amount of $28,000. Added to this amount were $1,500, which represented the amount of economic benefit which accrued to petitioner by continuing to discharge into the well, not operating a store and haul system, and not removing the contamination for the period petitioner was found in violation.[6] The rationales for the agency's categorizations of petitioner's violations were based on the facts outlined above and the agency's policies. We, therefore, cannot say that the EPA abused its discretion in assessing the administrative penalty.

Petitioner's bases for seeking a reduction in the amount of the fine can be summed up as a "plea for leniency." Romero argues that the nature of its business as a small service provider, its efforts at compliance, the "universal perception" that EPA regulations are difficult to understand, the lack of any economic benefit, and the economic impact that payment of the fine will have on the business, all suggest that the fine should be lowered to a "nominal" amount. We disagree.

First of all, as we said above, this court must review the EPA's administrative order for abuse of discretion. As we noted above, we can find no abuse of discretion in the agency's penalty assessment. This court is, therefore, without statutory authority to lower the civil penalty on appeal or order the Administrator of the EPA to do so on remand.

Also, as we outlined above, petitioner was given numerous opportunities to make known these same mitigating factors during the administrative process. While it might be true that the EPA statutory and regulatory schemes could be confusing to a non-expert, the letters sent to Romero were written in fairly simple language and did not require an in-depth understanding of environmental regulatory law in order to respond. Further, petitioner retained coun-

---

**4.** 40 C.F.R. §§ 144.11 and 144.12 are categorized as major violations, while 40 C.F.R. § 144.25 is categorized as moderate.

**5.** For 40 C.F.R. §§ 144.11 and 144.25 this factor was found to be major, while for 40 C.F.R. § 144.12 it was found to be moderate.

**6.** The actual dollar amount was determined, using a computer model, to be $1,453. This amount was then rounded to the nearest $500 to arrive at the $1,500 amount.

sel prior to the issuance of the final order and, therefore, presumably had the opportunity to comment upon the proposed order and/or request a hearing in which the issues raised on appeal could have been presented. Romero fails to come forward with any reason why these issues were not raised before the EPA. Under such circumstances, petitioner can be entitled to no relief from this court on appeal.

## IV.

### *Conclusion*

For the reasons stated above, we grant the EPA's motion for summary judgment and affirm the June 27, 1991 final administrative order issued by the EPA.

IT IS SO ORDERED.